Town of Lyndon *v.* John D. Miller *et al.*[*]

*Collector of Taxes. Official Oaths. Surety.*

The sureties upon the official bond of a first constable and collector of taxes, who was duly elected and acted as such during his official year, will not be discharged from liability on the bond, in consequence of his neglect to take the oath faithfully to discharge the duties of his office, as required by law.

Where a collector of taxes took the money collected on a tax bill one year to pay up his arrears of a previous year, and so directed the treasurer to apply it, but neither the treasurer nor any other officer of the town knew how or where he obtained the money for this purpose, it was *held*, that this misapplication was the fault of the collector and not the treasurer, and that the collector's bond would be holden for the amount so misapplied.

Assumpsit on a promissory note. This was an action against the bondsmen of one P. M. Willmarth, collector of the town of Lyndon, for his neglect to pay over to the plaintiff certain money collected on tax bills committed to him. It appears that the parties in five suits upon separate notes, pending in the county court, involving the same questions and facts, agreed to have them all referred to the Hon. Luke P. Poland, as referee,

[*]This case was argued at the August Term, 1862, and reserved for consideration. At the present term, the opinion of the court was delivered by Kellogg, J.

22

and that one report should apply in all the said actions. The facts reported by the referee are distinctly stated in substance in the opinion of the court. The cause was heard upon the report of the referee, and the county court, June Term, 1862, POLAND, CH. J., presiding, rendered judgment for the plaintiff according to the finding in the report. Exceptions by the defendants.

*Geo. C. & Geo. W. Cahoon,* for the defendants, cited *Aiken* v. *Richardson,* 15 Vt. 500 ; *Foxcraft* v. *Nevens,* 4 Me. 72 ; East. Dig. p. 617 ; 8 Mass. 275 ; 3 Md. 216 ; *Rogers* v. *Hough,* 4 Vt. 172 ; 2 Am. Lead. Cases 401 and 2.

*T. Bartlett,* for the plaintiff.

The constable need not be sworn to make his acts conclusive and binding. 15 Mass. 180 ; 6 N. H. 88 and 182 ; 3 N. H. 408. Also see, 2 Gray 298 ; 2 Pick. 223 ; 9 Met. 499.

KELLOGG, J. The defendants rely upon two distinct grounds of defence against the note declared on in this suit. This note was given on the settlement of a claim in favor of the town of Lyndon against Philotus M. Willmarth, who was the first constable and collector of taxes for that town elected at the annual town meeting in March, 1860, by the sureties on his official bond for that year, for the balance of the town tax of that town on the list for that year, which Willmarth had neglected to pay into the treasury of the town as required by law.

· I. It is claimed that the sureties of Willmarth on his official bond, of whom the defendant Miller was one, were discharged from liability on the bond in consequence of the neglect of Willmarth to take the oath faithfully to discharge the duties of his office as required by law,—the fact appearing that he did not take this oath at any time after his election as first constable at the annual town meeting in March, 1860. It is admitted that Willmarth was duly elected to this office, and, during his official year, acted as the first constable and collector of taxes of that town *in fact.* It is a settled principle that as he held the office by color of title, his acts, as an officer *de facto,* were valid so far

as they concerned the public, or the rights of third persons, to the same extent that they would have been if he had been an officer *de jure.* *Adams* v. *Jackson,* 2 Aik. 145. In the case of *Dean, Secretary of State,* v. *Bates et al.,* decided at the recent supreme court term in Washington County, it was held that the official bond of the late state treasurer was an obligatory instrument upon the sureties, notwithstanding his neglect to take the oath of office as required by the provisions of the constitution, and that decision is to be regarded as conclusive against this ground of defence. The case of *Courser* v. *Powers,* 34 Vt. 517, which was relied upon by the counsel for the defendants in support of their position on this point, only holds that a justice of the peace, in an action against himself for an account under a warrant issued by him, cannot justify, if he had not, before such arrest, taken the oath of office as prescribed by the constitution, and it expressly concedes that the defendant, "having been duly elected and commissioned as a justice of the peace, held the office under such an apparent title, that, if he assumed to act as such, he was undoubtedly a justice *de facto;* so that, as to third persons, his acts must be regarded as legal, and could not be brought in question." That case in no respect impugns the principle, which we think is supported by the whole current of legal authorities, that the acts of an officer *de facto* are always held valid so far as they may affect the rights of third persons or the public, and should receive the same consideration as those of an officer *de jure,* except when he is a party, and claims or justifies by virtue of his office, in which case he can protect himself only by showing that he is an officer *de jure.* *Adams* v. *Jackson, ubi supra;* *Taylor* v. *Nichols et al.,* 29 Vt. 104. In *Green* v. *Wardwell et al.,* 17 Ill. 278, it was held that the sureties upon an official bond of a justice of the peace will be held liable, so long as he performs the duties of the office, without reference to the regularity of his election, commission, or eligibility.

II. It appears that Willmarth had been the first constable and collector of taxes of the town of Lyndon for several years preceding 1861, and, when the town tax on the list of 1860 was committed to him for collection, he was in arrear upon the taxes

of the preceding year. These arrears he subsequently paid into the town treasury, and, of the monies paid for that purpose, "some seven or eight hundred dollars" was money which he had collected on the town taxes on the list of 1860, but, when he so paid in the same, he gave no information to the town treasurer how he had obtained the money, nor was this known to any of the officers of the town ; and the money thus paid in by him was applied by the town treasurer agreeably to Willmarth's directions. The defendants claim that this was a misapplication of the money by the town treasurer, and that the money so paid into the town treasury, having been collected by Willmarth on the tax bills for the year for which they were his sureties, should have been applied on those tax bills. It was the duty of Willmarth, beyond question, to have made this application of the money, but he did not make it, and his neglect so to apply it, so far from constituting a defence to his sureties in respect to their liability on his bond, was the very ground of his liability and their liability on the bond. So far as the town was concerned, he became responsible for the misapplication of the money to the same extent that he would have been if he had applied the money to his private use in any other way, and the very purpose of the bond was to protect the town from any misapplication of the proceeds of the taxes by him. No other officer of the town was in fault in making this application of the money, for it appears that neither the town treasurer nor any other town officer had any information in respect to the source from which Willmarth obtained the money, and that the money was applied by the town treasurer precisely in accordance with Willmarth's directions. In this state of the case, the town treasurer was justified in making that application of the money, and, if there was any fault in so applying it, it rests upon Willmarth alone. Even if the effect of this application of the money was to satisfy his liability for his defalcation on the taxes of a previous year, and thus to shift the burden of his defalcations from his sureties for that year and transfer it to the sureties for a subsequent year, it would not vary the case, because it is found by the referee that he alone was in fault in making this application of the

money.   If this ground of defence was available to the sureties at all, it could be so only *pro tanto,* for the amouut thus applied appears to have been only a part of the amount for which Willmarth was in arrear on the taxes of that year.   But we think that the fact that no other town officer was chargeable with any fault in giving this direction to the money, and that the application which was made of the money was precisely in accordance with Willmarth's directions, leaves no ground upon which his sureties can stand, either for defence against their liability on his official bond for his defalcation, or for complaint against the town or its other officers.   The town treasurer made no application of this money except such as he was entitled to make, in equity and good conscience as well as at law, when it was paid over to him.

Both of the grounds of defence relied upon by the defendants being, in our judgment, untenable, we do not find it necessary to consider the question whether, if tenable in respect to the original liability of the sureties on the bond, they would now be available as a defence to a suit upon a note given in settlement of that alleged liability.

The judgment of the county court for the plaintiff is affirmed.